EMPIRE RUBBER MANUFACTURING COMPANY, .PLAINT-
IFF IN ERROR, v. WILLIAM McK. MORRIS AND EDWIN
J. MORRIS, PARTNERS TRADING AS MORRIS & COM-
PANY, DEFENDANTS IN ERROR.

Argued December 5, 1905—Decided November 19, 1906.

1. Where written correspondence between two parties manifests a
   *bona fide* intent on both sides to come to a definite agreement,
   the writings should be so construed, if possible, as to effectuate the
   general purpose, and so as to constitute an agreement rather
   than to defeat an agreement.
2. The rule that a written instrument is to be taken most strongly
   against the writer is the last rule of construction to be resorted
   to, never to be relied upon except where other canons of con-,
   struction fail.

On error to the Supreme Court.

For the plaintiff in error, *John M. Dickinson* and *Edwin
Robert Walker*.

For the defendants in error, *Robert S. Woodruff* and *John
H. Backes*.

The opinion of the court was delivered by

PITNEY, J.     This writ of error brings under review a
judgment recovered by the plaintiff in error (plaintiff below)
for damages arising out of a breach of contract. Reversal is
prayed for on the ground that by reason of an erroneous rul-
ing of the trial justice in his instructions to the jury the
damages allowable to the plaintiff were improperly limited.

It appears the plaintiff was manufacturing belting and
hose at Trenton, in which manufacture cotton duck was
largely used. Defendants were manufacturers of cotton duck,
at Yardville, a few miles away. Shortly prior to October 1st,
1902, a verbal agreement was made between Mr. Skirm, rep-
resentative of the plaintiff, and Mr. Morris, representing the

defendants, looking to the delivery of cotton duck by the defendants to the plaintiff during the year commencing October 1st, at the price of seventeen cents per pound. It appears to have been an optional contract, not binding the plaintiff to purchase any particular quantity of duck, but binding the defendants to deliver so much as might be required by the plaintiff. Whether the contract was to furnish duck during the year up to the gross quantity of one thousand rolls, in quantities as called for by the plaintiff (their estimated requirements being sixty to seventy rolls per month), or whether the contract was to deliver up to seven hundred and twenty rolls during the year, was a matter that seems to have been left in uncertainty at the trial. It was likewise in dispute whether this contract, instead of being a contract by the defendants to deliver the gross quantity contemplated, whenever it should be called for by the plaintiff within the year, was a contract simply to respond to plaintiff's monthly requisitions of not less than sixty nor more than seventy rolls each month.

Up to the month of June, 1903, only seventy-four rolls of duck had been called for by the plaintiff, and these had been furnished by the defendants. In that month, a difference having arisen between the parties as to their *status* under the arrangement above referred to, the following correspondence ensued :

"EMPIRE RUBBER MANUFACTURING Co.,

"TRENTON, N. J., June 22d, 1903.

*"Messrs. Morris & Co., Groveville, N. J.:*

"GENTLEMEN—In order to complete our record, we beg to confirm conversation had with you over 'phone by our Mr. Nason regarding contract placed with you by Mr. Skirm about the latter part of September, last year, for our requirements in cotton duck, to October 1st, 1903, at 17c. per pound.

"Yours truly,

"EMPIRE RUBBER MFG. Co.,

*"Per* H. R. N."

"MORRIS & COMPANY,

"YARDVILLE, N. J., June 24th, 1903.

*"Empire Rubber Manufacturing Co., Trenton, N. J.:*

"GENTLEMEN—Your letter received. Our understanding with Mr. Skirm was that you would use somewhere between sixty or seventy rolls per month, he thought, and we would protect you at seventeen cents per pound, 3 per cent., ten days.

"Since our understanding you have taken, in the nine months, just seventy-four rolls in all, or about eight rolls per month. This is so far from the understanding we had with Mr. Skirm that we feel compelled to put it on a little different basis for the remaining three months, namely, we will accept orders from you, up to fifty rolls of duck, at seventeen cents per pound, 3 per cent., ten days; but any orders in excess of this amount must be at a new price.

"Yours very truly,

"MORRIS & CO."

"EMPIRE RUBBER MANUFACTURING CO.,

"TRENTON, N. J., June 25th, 1903.

*"Messrs. Morris & Co., Yardville, N. J.:*

"GENTLEMEN—We beg to· acknowledge receipt of your favor of the 24th instant, and we hardly think your position is in line with your general reputation for being fair in your business dealings.

"We think you will acknowledge your contract with Mr. Skirm was for our year's supply, and if we overestimated our wants it only means your gain, as the number of rolls mentioned by Mr. Skirm had nothing whatever to do with the contract itself, but simply a guidance for your protection, and as you have not been at a loss on account of the verbal estimate, we do not see how you justify your refusal at this time to accept our requisitions on account of contract, so long as they are within the number of rolls as estimated we would need.

"We understand you stated to our Mr. Nason, over 'phone, the contract with us was a verbal one, for the guidance of our

shipping clerk. We have memorandum of contract made with you, and we feel quite sure you will find among your files the contract, or at least some reference to it, and if you are successful in finding same we would thank you to furnish us with a copy of it. We remain,

"Your truly,

"Empire Rubber Mfg. Co.,

"C. Edward Murray, *Treas.*"

"Morris & Company,

"Yardville, N. J., June 26th, 1903.

*"Empire Rubber Manufacturing Co., Trenton, N. J.:*

"Gentlemen—Your letter received this morning. When we first had our talk with Mr. Skirm we refused to talk anything otherwise than a definite contract. But after some weeks we entered into an agreement that we would protect you in price for sixty or seventy rolls per month, as this was the number Mr. Skirm thought we could count on each month, although he did not bind himself to take that number. We told him we would have to know in order to protect ourselves in cotton and sales of our goods. Since that understanding you have taken, in nine months, what Mr. Skirm led us to expect in one month. We have frequently called your company up to see how the duck situation was, but always understood you did not need any duck. We have since had to try and sell the quantity we saved for you. We fail to understand why we are not treating you right, for we feel the 'shoe is on the other foot.'

"You certainly do not think we would enter into an agreement last September to deliver you all your order in two or three months at the tag end of the year, for you must appreciate that we could not do business at that rate, for we would not be able to spare the goods owing to our other contracts.

"We have not prepared to deliver you duck in the next three months any faster than what you have been taking in the last nine months, and you have not led us to expect you would want it any faster, although we have called you over telephone many times.

"We now offer you, in the next three months, almost as many rolls as you have taken in the nine months, and you think we are not fair. We think, after you come to look into the situation a little closer, you will see our position, and see that we are acting very liberally. We are,

"Very truly yours,

"MORRIS & CO."

"EMPIRE RUBBER MANUFACTURING CO.,
"TRENTON, N. J., June 29th, 1903.

"*Messrs. Morris & Co., Yardville, N. J.:*

"GENTLEMEN—We beg to acknowledge receipt of your favor of the 26th inst., and are surprised at the position which you take regarding our contract for duck. We had hopes you would be willing to treat us in your usual fair manner and extend, if necessary, time of delivery of goods as covered by agreement, but under the circumstances we will not ask this. · We will favor you by considering the smallest estimate of our requirements, which would equal 720 rolls for the year; deducting 74 rolls delivered, would leave a balance of 646 rolls; these you can deliver to us at the rate of 215 rolls per month. This is only in accordance with your contract, and we think you will agree with us there was never any reference to just what time deliveries must be made. ·

"Our actual requirements in the next three months will be about 60 to 75 rolls per month, and if you would prefer making us shipments of about this amount, until completion of contract, it would be agreeable to us. We remain,

"Yours truly,

"EMPIRE RUBBER MFG. CO.,

"C. EDWARD MURRAY, *Treas.*"

"EMPIRE RUBBER MANUFACTURING CO.,
"TRENTON, N. J., July 7th, 1903.

"*Messrs. Morris & Co., Yardville, N. J.:*

"GENTLEMEN—We are without your reply to our favor of the 29th ult. We herewith enclose you requisitions on account of our contract, and unless we have from you prompt

delivery we shall be compelled to purchase on open market, and in such case we shall charge you with the difference between our contract price and market price of to-day.  We remain,

"Yours truly,
"EMPIRE RUBBER MFG. CO.,
"C. EDWARD MURRAY, *Treas.*"


"MORRIS & COMPANY,
"YARDVILLE, N. J., July 10th, 1903.
*"Empire Rubber Manufacturing Co., Trenton, N. J.:*

"GENTLEMEN—We have decided to accept your offer in your letter of June 29th and deliver you 646 rolls of belting and hose duck at 17 cents, 3 per cent.  During this and next month we presume you can get along with 30 or 40 rolls per month, as you know cotton is very high.  After September 1st we to deliver you at the rate of 60 rolls per month until the above number of rolls are delivered—you to send us specifications for each 60 rolls as near the first of the month as possible.  We are,

"Very truly yours,
"MORRIS & CO."


"EMPIRE RUBBER MANUFACTURING CO.,
"TRENTON, N. J., July 13th, 1903.
*"Messrs. Morris & Co., Yardville, N. J.:*

"GENTLEMEN—We beg to acknowledge receipt of your favor of the 10th instant, and note that you have decided to fill contract according to our understanding of it and as per our letter of June 29th.

"We shall draw on you within the next two months for just as little as we possibly can, with the understanding, however, that you do not allow the change to have any bearing whatever upon terms of contract.  We remain,

"Yours truly,
"EMPIRE RUBBER MFG. CO.,
"C. EDWARD MURRAY, *Treas.*"

It was the insistment of the plaintiff at the trial that the letters of June 29th, July 10th and July 13th constituted a confirmation of defendants' obligation to carry out the previous arrangement, to the extent of delivering six hundred and forty-six rolls of duck at the stipulated price of seventeen cents, and at the same time a modification of the previous arrangement with respect to the time of making deliveries.

With the letter of July 7th, just quoted, a requisition was enclosed containing specifications for one hundred and ninety-two rolls of duck. Subsequently, on September 21st, plaintiff wrote to defendants, referring to this requisition and enclosing an additional requisition for two hundred and fifty-two rolls, at the same time referring to the requisition of July 7th as being still in force. On November 23d, 1903, specifications were forwarded by the plaintiff to defendants for one hundred and ninety-nine rolls, which were said to make up the balance of the six hundred and forty-six rolls. These three requisitions (one hundred and ninety-two rolls, two hundred and fifty-two rolls and one hundred and ninety-nine rolls) aggregated but six hundred and forty-three rolls; the difference of three rolls was probably accounted for by verbal orders through the telephone, of which there was some evidence.

After the correspondence of June and July, defendants made deliveries of duck to the plaintiff at various times during the rest of the year, viz., in July, thirty-one rolls; in August, twenty-seven rolls; in September, twelve rolls; in October, nineteen rolls; in November, thirteen rolls, and in December, twenty-six rolls—a total of one hundred and twenty-eight rolls. The circumstances under which these deliveries were made, invoices rendered and payments for the same received by defendants, were consistent with the theory that the defendants recognized an obligation arising out of their letter of July 10th, as accepted by the plaintiff on July 13th.

During the latter part of the year 1903 complaints were made by the defendants that the invoices were not paid with such promptness as they claimed to be due, and according to

the evidence of the defendants it was for this avowed reason that in January, 1904, they refused to make any further deliveries of duck to the plaintiff. Thereupon the plaintiff filled its requirements by purchases in the open market, at prices largely in excess of seventeen cents per pound. (the price of cotton having risen since July, 1903), and brought this action to recover their consequent damages.

The declaration contains several counts, some of them relying upon the original verbal contract of September, 1902, and others founded upon a contract alleged to have arisen out of defendants' letter of July 10th, 1903.

The principal matter now requiring consideration is the instruction of the learned trial justice to the jury that the plaintiff's rights must rest upon the former contract. To this exception was duly taken and error is now assigned thereon. The ground upon which the trial justice so held is that defendants' letter of July 10th did not amount to an unqualified acceptance of plaintiff's letter of June 29th, and that, on the other hand, plaintiff's letter of July 13th did not accept the modification embodied in defendants' letter of July 10th.

With the latter view we cannot agree. From the previous correspondence, down to defendants' letter of June 26th, it is plain, we think, that the main controversy between the parties was with respect to the amount of duck that the defendants remained bound to deliver under the arrangement of the previous September. Their insistment was that they had agreed only to protect the plaintiff in price for sixty or seventy rolls per month, at seventeen cents per pound, provided monthly specifications were furnished to them, and that because the plaintiff had called for only seventy-four rolls during nine months they were justified in refusing orders from the plaintiff during the remaining three months, except to the extent of fifty rolls in all. They not only disputed the contention of the plaintiff that they remained bound to deliver six hundred and forty-six rolls between the time of writing and October 1st, 1903, but, admitting that by the previous contract, as they themselves construed it, the plaint-

iff would be entitled to sixty or seventy rolls per month for the remaining three months, they proposed to confine the plaintiff to fifty rolls during that period, on the ground that this was "almost as many rolls as you have taken in the nine months." Plaintiff's contention, on the other hand, was that the contract of September, 1902, contemplated a year's supply, and that the suggestion of deliveries to the extent of sixty or seventy rolls per month was a non-essential element, so that plaintiff was still entitled to call for the six hundred and forty-six rolls remaining undelivered.

The letters of June 29th, July 10th and July 13th are to be read in the light of this state of the controversy. They are also to be dealt with in accordance with the established canons for the construction of written agreements. One of these is that the writings shall receive a reasonable construction according to the intent of the parties. 1 *Chit. Con.* 106. We think we may paraphrase the observation of Dr. Paley, and say that each letter should be taken in that sense in which the writer apprehended at the time that the recipient understood it. *Id.* 104. Another and important canon of construction is that the writings should be so construed, if possible, as to effectuate the manifest purpose of the parties to come together in an agreement; that such a construction should be adopted, if possible, as to constitute an agreement rather than defeat an agreement. This general purpose to make an agreement is the fundamental basis of the maxim *"verba debent intelligi cum effectu, ut res magis valeat quam pereat."* 1 *Chit. Con.* 111; *Rue* v. *Rue*, 1 *Zab.* 369, 375, 379; *Varic* v. *Crane*, 3 *Gr.* 128; 1 *Cyc.* 586; 5 *Laws. Rights, Rem. & Pr.,* § 2319. We must not be unmindful of the rule that a written instrument is to be taken most strongly against the writer, but this being a rule of some strictness and rigor, the established doctrine is that it is the last to be resorted to— a rule never to be relied upon except where other rules of construction fail. 1 *Chit. Con.* 137.

We now come to the writings in question. In the letter of June 29th plaintiff said, in substance, that the contract contemplated at least seven hundred and twenty rolls for the

year.    Deducting seventy-four rolls delivered, would leave
a balance of six hundred and forty-six rolls to be delivered.
Plaintiff insisted they were entitled to require delivery of
these within the next three months, but suggested a modifi-
·cation commensurate with their actual requirements.    "Our
actual requirements in the next three months will be *about*
:sixty to seventy-five rolls per month, and if you would prefer
making us shipments of *about* that amount until completion
of contract it would be agreeable to us."    This means, of
·course, that the proposed monthly shipments of *about* sixty
to seventy-five rolls were to continue until six hundred and
forty-six rolls should have been delivered.

Defendants' letter of July 10th conceded the main conten-
tion that six hundred and forty-six rolls should be delivered,
at seventeen cents per pound, and suggested (as favorable to
themselves, in view of the high price of cotton then ruling)
a limitation of deliveries commensurate with the current re-
·quirements of the plaintiff, the language used being:    "Dur-
ing this and next month we presume you can get along with
thirty or forty rolls per month, as you know cotton is very
high.    After September 1st we to deliver you at the rate of
sixty rolls per month until the above number of rolls (646)
are delivered."    This was an acceptance of the spirit and
essence of plaintiff's own suggestion, as contained in the letter
of June 29th.    The mention in that letter of plaintiff's re-
quirements during the next three months was avowedly ap-
proximate.    Defendants' reply prescribed limits beyond which
they were not willing to bind themselves respecting deliveries.

Plaintiff's letter in reply, dated July 13th, begins:    "We
beg to acknowledge receipt of your favor of the 10th instant,
and note that you have decided to fill contract according to
our understanding of it, and as per our letter of June 29th."
The trial justice construed this as meaning that plaintiff
insisted upon regarding defendants' letter of July 10th as
an acknowledgment of the correctness of plaintiff's contention
in its letter of June 29th, to the effect that the original con-
tract, remaining unfulfilled to the extent of six hundred and
forty-six rolls, plaintiff was entitled to deliveries at the rate

of two hundred and fifteen rolls per month for the remaining three months of the term. We do not so construe this letter. In our view, the clause just quoted means "to fill contract according to our understanding of it, *as modified by* our letter of June 29th"—that is, to supply the six hundred and forty-six rolls, but with deliveries modified to accord with the anticipated requirements of the plaintiff. The clause amounts to an acknowledgment that the defendants' own suggestion as to deliveries was acceptable to the plaintiff, as being in accord with the spirit of its letter of June 29th.

Nor do we construe the latter part of plaintiff's letter of July 13th as meaning anything different. It says: "We shall draw on you within the next two months for just as little as we possibly can [this being favorable to defendants, in view of the ruling high price of cotton], with the understanding, however, that you do not allow the change to have any bearing whatever upon terms of contract." The trial justice construed this as insisting upon the continuing force of the original contract of September, 1902, as asserted by the plaintiff in its letter of June 29th. We do not so construe it. In our view, the allusion is to one of the points of difference that had existed between the parties. Defendants had contended, in their letters of June 24th and June 26th, that because plaintiff had not called for deliveries of cotton each month to the extent it was entitled upon defendants' own construction of the agreement of the previous September, plaintiff had lost its right to insist upon the stipulated monthly deliveries during the last three months of the term. The final clause in plaintiff's letter of July 13th was intended to guard against a similar misunderstanding in future. It amounted to saying we will limit our requisitions during the next two months as much as possible—even below the limit you have fixed in your letter of July 10th—provided you do not allow this change to have any bearing whatever upon terms of contract.

The natural force of this proviso, at most, is not to qualify plaintiff's acceptance of defendants' proposition as contained in the earlier part of the letter, but to qualify the effect that

might otherwise be attributed to plaintiff's proposed forbearance thereafter to call for duck as rapidly as it was entitled to call for it. But assuming that the concluding clause of this letter may legitimately be taken to throw light upon its first sentence, the question is, what *contract* was referred to as that whose terms were not to be affected by the proposed change in requisitions? Aside from its context, the word might refer either to the contract of the previous September or to the new contract just now concluded between the parties. If it be given the former meaning, its tendency is to nullify the efforts that the parties were manifestly making, in good faith on both sides, to reach a common understanding. Unless the context requires it, we should hesitate to attribute to the word "contract"—literally the final word in the written negotiation between the parties—such a meaning as would at least tend to render futile their efforts to agree. We do not think the context requires us to adopt this meaning. We think, on the contrary, that the phrase "that you do not allow the change to have any bearing whatever upon terms of contract," refers to *the terms of the contract as now concluded*—or, what is the same thing, the terms of the contract of the previous September, as modified by the present correspondence. This construction comports with the general purpose of both parties to come to a practical working arrangement—in other words, to a definite agreement.

It results that the letter of July 13th was an unqualified acceptance of the modifications, proposed in defendants' July 10th letter, of the propositions contained in plaintiff's letter of June 29th. This leaves the letter of July 10th as substantially evidencing the agreement between the parties.

We find nothing in what afterwards took place to debar the plaintiff from enforcing this contract. With respect to the stipulation that specifications for each sixty rolls should be furnished as near the first of the month as possible, we think it was a justifiable inference from the evidence that the requisitions of July 7th, September 21st and November 23d (supplemented, it may be, by additional requisitions communicated by telephone), were tendered by the plaintiff and ac-

cepted by the defendants as a detail of all the duck that was to be delivered under the contract of July 10th, and as a substitute for the monthly specifications of sixty rolls. Whether plaintiff had not the right (without the consent of the defendants) to furnish their specifications (up to the aggregate of six hundred and forty-six rolls) in advance of the time that the specifications were due according to the terms of the contract of July 10th—leaving defendants to fulfill those specifications at the rate of delivery provided for by that contract—is a question that need not now be determined.

With regard to the terms of payment, the letter of July 10th merely says "17c., 3 per cent." Construing this in the light of the previous correspondence and the testimony concerning the meaning of the trade term, it means seventeen cents per pound, payable in sixty days, with a discount of three per cent. from the face of the bill if payment be made within ten days. This no doubt gave to defendants the right to insist upon payment of the invoices in full, without discount, if payment was delayed beyond the ten days, but mere delay in payment beyond the ten days did not give to defendants the right to abrogate the contract.

For the erroneous ruling of the trial justice, whereby plaintiff's rights were confined to such as arose from the contract of September, 1902, the judgment must be reversed and a new trial awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, GREEN, GRAY. 12.