Argued December 10, decided December 23, 1913.

# SPANDE *v.* WESTERN LIFE INDEMNITY CO.

### (136 Pac. 1189.)

**Appeal and Error—Review—Former Decision on Appeal.**

1. A decision against plaintiff on a complaint on a benefit certificate, based on a contract between defendant and the order which had originally issued the certificate, does not bar a recovery on an amended complaint, based on defendant's representations that the certificate had been transferred to the defendant; that defendant would assume all obligations thereunder, and if plaintiff would pay to defendant the same premiums he was obliged to pay to the order, defendant would perform all the terms and conditions of the certificate.

**Insurance—Mutual Benefit Insurance—Actions.**

2. In an action on a benefit certificate, where plaintiff claims under the representations of defendant that the order which had originally issued the certificate had transferred the certificate to defendant, that defendant would assume all obligations thereunder and that if plaintiff would pay defendant the premiums, defendant would perform the terms of the certificate, plaintiff is not bound to prove the terms of the contract between the order and defendant, but makes a case for the jury when he shows that defendant has promised to assume the burden of the order, and that, relying on such promise, plaintiff has paid defendant the premiums which would otherwise have been due the order.

**Insurance—Mutual Benefit Insurance—Actions—Question for Jury.**

3. In an action on a benefit certificate, evidence *held* sufficient, as against a motion for nonsuit, to show a contract of insurance by defendant by the assumption of the burden of the order which had originally issued the certificate.

*Contracts—Construction—Practical Construction by Parties.*

4. The conduct of the parties with respect to the subject matter of a contract will be looked to as affording evidence of the meaning the parties gave to the agreement.

*Contracts—Construction—Understanding of Promisor.*

5. The language of a contract must be interpreted in the sense that the promisor knew, or had reason to know, that the promisee understood it.

*Contracts—Construction—Adverse to Party Using Words.*

6. The words of a contract are to be strongly construed against the party using them.

*Insurance—Mutual Benefit Insurance—Actions—Burden of Proof.*

7. In an action against a defendant which has assumed the obligations of a benefit certificate which provides for the payment to plaintiff of the proceeds of one assessment, not exceeding $2,000, plaintiff need not allege and prove what the proceeds of an assessment would be, but the burden is on defendant to show that it would be less than $2,000.

*Insurance—Powers—Estoppel to Deny Liability.*

8. A company which has assumed the obligations of a fraternal order on a benefit certificate, and has accepted, without objection, plaintiff's dues from month to month, cannot escape liability on the ground that its contract with plaintiff is *ultra vires.*

From Clatsop: JAMES A. EAKIN, Judge.

Department 2.    Statement by MR. JUSTICE McNARY.

Entertaining the thought that he had a binding contract of insurance with the Western Life Indemnity Company, a corporation, and that its every provision had been faithfully observed, H. A. Larsen Spande as plaintiff, on November 4, 1908, brought an action on the policy to recover the sum of $2,000, the amount of its matured value. Plaintiff prevailed in the litigation which followed, and defendant appealed to this court obtaining a reversal of the judgment (61 Or. 220, 117 Pac. 973, 122 Pac. 38), the court holding in effect that plaintiff had failed to prove the contract upon which he built defendant's liability.

Turning to plaintiff's original complaint, we observe these formal averments: "That on and prior to the 21st day of March, 1908, the said defendant repre-

sented to this plaintiff in writing that by the unanimous action of the Supreme Union of the Order of Washington, and with the approval of the insurance department of the State of Washington, said defendant had entered into an agreement with the Supreme Union of the Order of Washington, whereby all insurance theretofore taken by said Supreme Union of the Order of Washington had been lawfully transferred to the defendant, and that, by the payment to defendant by this plaintiff of the monthly assessments due by the terms of said certificate, life and endowment policy mentioned to be done and performed by the Supreme Union of the Order of Washington would be thereby assumed, complied with, and paid by the said defendant; and then and there in writing and for a good and valuable consideration in hand paid by this plaintiff in writing covenanted, contracted, and agreed, if this plaintiff would pay the said defendant all of the assessments required to be paid under the laws of the Supreme Union of the Order of Washington on said benefit certificate, life, and 20-year endowment policy, hereinbefore mentioned, that said defendant would assume all of the conditions and stipulations contained in said insurance policy required to be done and performed by said Supreme Union of the Order of Washington. That plaintiff thereupon accepted said contract and agreement and pursuant thereto, and in accordance therewith this plaintiff on said date paid and has ever since continued to pay all of the assessments, premiums and moneys required to be paid by said insurance policy aforesaid, and complied with all the conditions thereof, to wit, August 28, 1908, for that said benefit certificate, life, and 20-year policy hereinbefore mentioned, under the laws of said orders and agreement with defendant, matured 20 years from August 28, 1888, namely, August 28, 1908. That on or about the said 21st day of

March, 1908, and at the time said defendant entered into said contract of insurance with plaintiff, and as part consideration thereof, the said Supreme Union of the Order of Washington transferred and assigned and delivered to defendant all of its business, assets, property, property rights, and goodwill, together with all of the policies, benefit certificates, and endowment certificates that had been theretofore issued by the said Supreme Union of the Order of Washington, and in consideration thereof defendant assumed and took over all of the benefit certificates, life and endowment policies theretofore issued by said Supreme Union of the Order of Washington and business and goodwill of such order, and thereupon the said Supreme Union of the Order of Washington ceased business and became absolutely insolvent and ceased to exist. That in consideration of the transfer to said defendant by the said Supreme Union of the Order of Washington of all its assets, policies, benefit certificates and endowment policies, properties and business and goodwill, the said defendant undertook, promised, and agreed to assume all of the obligations and liabilities of the Supreme Union of the Order of Washington, and said defendant, under each and all such benefit certificates, life, and endowment policies, theretofore issued by such order, entered into a new contract with all of the policy-holders, holders of benefit certificates and endowment certificates, and in writing with this plaintiff agreed to pay this plaintiff, should he be alive on August 28, 1908, and should have his assessments paid, the full sum of $2,000.''

After asserting the incorporation of defendant and setting forth *in haec verba* the certificate of membership in the company, plaintiff in his amended complaint averred in part:

''That on said 22d day of February, 1908, the defendant herein, in writing, represented and stated

to plaintiff herein that the said benefit certificate and life insurance policy issued upon the life of plaintiff by said Order of Washington had been lawfully transferred to the defendant, and that the defendant was the owner thereof, and by reason of such transfer, defendant had and thereby assumed all obligations thereof imposed upon said Order of Washington, and in writing demanded that plaintiff should thereafter pay to defendant all of the monthly payments due by the terms of the said benefit certificate hereinbefore mentioned, and then and there covenanted and agreed that immediately upon the receipt by defendant of the first payment due thereafter on such policy the plaintiff would cease to be of the Order of Washington, and would become one of the defendants herein, and that, by reason of such transfer, and in consideration of such payment and the further payment to defendant of all monthly dues in accordance with the terms of said benefit certificate, the said defendant would thereby make the said benefit certificate and insurance contract issued plaintiff by the Order of Washington aforesaid the benefit certificate and insurance policy of the defendant, and would immediately, and upon the payment by plaintiff to defendant of said first monthly payment, assume all of the obligations theretofore imposed upon said Order of Washington under such certificate until such time as a policy for an equivalent amount and on the same terms could be issued on the forms of the defendant and at the defendant's rates, in accordance with the provisions of the reinsurance contract entered into between the Order of Washington and the defendant. That the said defendant then and there represented to plaintiff that, in accordance with the terms of the said reinsurance contract, which defendant represented to plaintiff as having been entered into between said Order of Washington and the defendant, by plaintiff paying defendant the amount of the dues and assessments required to be paid under plaintiff's said benefit certificate, the said benefit certificate and life

insurance policy would become the policy of said defendant, and it would thereby be obligated to pay the amount of said policy in case of plaintiff's death or its maturity, and such benefit certificate would be an obligation on the part of the defendant to assume all of the obligations thereof and theretofore imposed upon the Order of Washington thereby. That this plaintiff, relying upon said written statement of said defendant, and believing the same to be true, and believing that said defendant had acquired said policy and benefit certificate aforesaid, immediately upon receipt of said written statement aforesaid, and on or about March 1, 1908, remitted to defendant the full amount of the dues and assessments that plaintiff was then required to pay under and by virtue of the terms of his said benefit certificate aforesaid, and the same was duly received by the said defendant on or about the 1st day of March, 1908. That on the 25th day of March, 1908, the said defendant acknowledged receipt of said payment, and delivered to plaintiff a guaranty certificate, which was in writing, and requested plaintiff to attach the same to his said benefit certificate and life insurance policy aforesaid. That said guaranty certificate so delivered to plaintiff was and is in words and figures following, to wit:

" 'Western Life Indemnity Company,
" 'Geo. M. Moulton, President,
" 'Home Office, Masonic Temple, Chicago.'

" 'This certifies, that all the covenants and obligations heretofore imposed and undertaken by the Order of Washington under and by virtue of a certain life benefit certificate No. 245, issued by said the Order of Washington on the life of H. A. L. Spande are hereby assumed by the Western Life Indemnity Company to the extent and in the manner as are set forth in a certain contract of reinsurance made and entered into by and between the Order of Washington, of Portland, Oregon, and the Western Life Indemnity Company, of Chicago, Illinois, on the 15th day of February, A. D. 1908. Executed and delivered at the home office of the

Western Life Indemnity Company in Chicago, Illinois, this 21st day of March, 1908.

" 'WESTERN LIFE INDEMNITY Co.,

" 'By GEO. M. MOULTON,

" 'President.'

"That at the time said defendant delivered to plaintiff said paper designated as 'guaranty certificate,' the said defendant represented and stated to plaintiff that the contract therein referred to as the 'contract of reinsurance made and entered into by and between the Order of Washington, of Portland, Oregon, and the Western Life Indemnity Company, of Chicago, Illinois, on the 15th day of February, A. D. 1908,' bound and obligated the defendant to carry out all of the terms and conditions of the said benefit certificate and life insurance policy of plaintiff herein issued to him as aforesaid, which were thereby originally imposed upon the Order of Washington, and that by such contract the defendant herein made such benefit certificate and life insurance policy the benefit certificate and life insurance policy of the defendant herein, and the defendant herein thereby assumed all of the obligations thereof, and not otherwise.   That this plaintiff relied upon and believed the said representations of the defendant herein, and believed that the said contract and said guaranty certificate mentioned fully obligated the defendant herein to all of the terms and provisions of said benefit certificate and life insurance policy originally assumed and imposed upon the Order of Washington, and that it thereby made such benefit certificate and life insurance policy the benefit certificate and life insurance policy of the defendant herein, and thereupon this plaintiff released the said Order of Washington from all obligation thereunder, and accepted the insurance contract from said defendant herein, and paid the defendant herein all sums of money he was, by the terms of such benefit certificate and life insurance policy, required to pay the Order of Washington, and in all respects fully paid

all such sums and payments and otherwise fully complied with all the terms and conditions of said benefit certificate and life insurance policy aforesaid on his part required to be done and performed up to and until the 28th day of August, 1908, when said policy matured, and by the terms thereof and the said contract between plaintiff and defendant, the defendant became and was indebted to plaintiff in the full sum of $2,000.''

Following a denial of the contents of plaintiff's amended pleading, defendant alleged as a separate defense that it did not assume any of the obligations of the Order of Washington, so far as the same related to endowment insurance, and that it had no power to contract such insurance under its charter, or by the law of the state of Illinois under which it was incorporated, as the statutes of that state expressly prohibit it from issuing or assuming endowment policies; that it entered into but one contract with the Order of Washington, and by which contract it did not assume the payment of, or include, the certificate issued by the Order of Washington to plaintiff, and that it never agreed to pay the certificate upon maturity, and never assumed to pay any sum whatever to plaintiff during his lifetime, or otherwise, and concluded by defining the nature of the contract had with the Order of Washington. In his reply plaintiff pleaded an estoppel *in pais,* which called into account defendant's conduct with respect to its representations to plaintiff. Judgment in the sum of $2,000 was awarded to plaintiff.                          AFFIRMED.

For appellant there was a brief over the name of *Messrs. Manning & White,* with an oral argument by *Mr. Samuel White.*

For respondent there was a brief and an oral argument by *Mr. George C. Fulton.*

Mr. Justice McNary delivered the opinion of the court.

1. At the gateway of this controversy, defendant challenges the ability of plaintiff to maintain this action, for the reason that the matters here presented were formerly adjudicated, and that in the guise of a new robe plaintiff marshals the same facts as formed the lower structure of the original action. If this situation be true, it is needless longer to pursue the discussion of this case.

A diagnosis of plaintiff's primary pleading in the former action will disclose the true situation.

Plaintiff in his initial complaint took the position that at the time of the purchase of the policies and business of the Order of Washington by defendant it covenanted to assume all the policies issued by the Order of Washington, including the plaintiff's, and that defendant agreed to pay the policy according to the terms contained therein. In fine, plaintiff founded his right to recover upon the contract had between the Order of Washington and defendant. In his amended complaint, plaintiff declares that defendant represented to him in writing that his benefit certificate had been transferred to defendant, and that it would assume all the obligations imposed thereunder; that if plaintiff would pay defendant the same premium which he was obliged to pay the Order of Washington, defendant "would step into the shoes" of that order, and perform all the terms and conditions of the policy required to be performed by the Order of Washington; that defendant further represented to plaintiff that by the terms of its contract of purchase with the Order of Washington, defendant was bounden to perform all the obligations of the Order of Washington required to be done under plaintiff's benefit certificate; that, acting upon such advice,

he entered into the. contract of insurance with the defendant, releasing the Order of Washington from any further obligation, and promptly and fully paid defendant all premiums and dues thereunder, which defendant duly received under the terms of the contract, and that after plaintiff had paid the first assessment or dues, defendant sent plaintiff a writing, with the request that it be attached to his benefit certificate, which in itself plaintiff asserts was a binding contract on the part of defendant. Thus it is plain that the first cause of action was predicated on a contract made between defendant and the Order of Washington. Upon this hypothesis, plaintiff could not recover, unless he established the contract which he asserted was the foundation of his right of action. By the terms of the amended complaint, plaintiff places defendant's liability upon certain written representations, made directly with plaintiff, embodying the essential ingredients of a lawful contract. From these reflections, we are of the view the issues tendered in this action are not the same ones litigated in the former controversy, and that defendant's attack is without merit.

2. At the conclusion of plaintiff's case defendant interposed a motion · for an order of nonsuit, upon several grounds, the significant one assigned being that plaintiff offered no evidence to show what "the contract was, or the terms of the contract between the defendant and the Order of Washington, or any contract between the plaintiff and defendant, or to introduce evidence of or prove any contract between the defendant and the Order of Washington whereby the defendant insured the members of the Order of Washington, or assumed to pay their policies, or the certificate held by plaintiff." The trial court overruled the motion. The issues created by the pleadings did not impose upon plaintiff the duty of proving, in a literal way, the context of the contract made between the

Order of Washington and defendant with respect to the latter's obligation to the members of the former company. Plaintiff made a case sufficient to be submitted to the jury when he proved from written documents that defendant had promised to take up the load of the Order of Washington, and, relying upon the promise, paid to defendant company the premiums which were due on the policy, and which would have been paid the Order of Washington had not the latter transferred its obligations and property to defendant.

3. Defendant in its answer pleaded specially a contract had with the Order of Washington which it claimed was a limitation of its liability and the measure of its responsibility to plaintiff; consequently the duty of proving this contract rested on defendant.

Plaintiff erected his case upon the following correspondence and documents, outside of the benefit certificate, which is omitted for the sake of brevity:

"Geo. M. Moulton, President.
"The Order of Washington Department.
"Western Life Indemnity Co., Masonic Temple, Chicago.
"Chicago, February 22, 1908.
"To the Comrades of the Order of Washington:
"You have already been officially advised by your Supreme President and Supreme Secretary that by the unanimous action of the Supreme Union of your order, and with the approval of the Insurance Department of Washington, the insurance on your life in the Order of Washington has been lawfully transferred to the Western Life Indemnity Company of Chicago. In behalf of this company I extend to you a fraternal greeting with the glad hand of fellowship, and a cordial welcome into the bosom of our organization. By the payment to our company of the next monthly payment due by the terms of your present Life Benefit Certificate you thereby become one of us and one with us,

I trust until death do us part. Immediately upon our receipt of such payment a formal agreement or guaranty will be transmitted to you for attachment to your present life benefit certificate, which will bind our company to fulfill all the obligations heretofore imposed upon the Order of Washington, under such certificate, until such time as a policy for an equivalent amount can be issued on our forms, and at our premium rates in accordance with the provisions of the reinsurance contract entered into between the Order of Washington and this company. Continue the monthly payments on your present certificate as heretofore in the same amount and in the same way. By so doing you may rest assured that your rights thereunder will be fully safeguarded and adequately protected. Come with us—live with us—die with us. You will never regret either.

"Faithfully yours,

"Geo. M. Moulton, President."

"Geo. M. Moulton, President.
"The Order of Washington Department.
"Western Life Indemnity Co., Masonic Temple, Chicago.

"March 5, 1908.

"Esteemed Comrade:

"You will hereafter remit your regular assessment and quarterly dues direct to the Western Life Indemnity Company, Masonic Temple, Chicago, Illinois, making all remittances payable to said company. Immediately upon receipt of your first remittance this company will send you a 'Guaranty Slip' which you will attach to your Order of Washington contract. This 'Guaranty Slip' will be countersigned by General Geo. M. Moulton, President Western Life Indemnity Company, and it agrees to fulfill all the conditions of your present certificate for one year, upon your paying your regular dues and assessments. This arrangement gives you double protection without addi-

tional cost.   A little later you will be sent a list of
the several kinds of insurance certificates issued by
the Western Life Indemnity Company, and then, if
you wish, you may exchange your present certificate
for any certificate issued by the Western Life In-
demnity Company within the year.   Upon receipt of
your first remittance you will be mailed an official
receipt, as well as a 'Guaranty Certificate.'   Make
your remittance by post office money order, bank draft
or express money order.   Do not delay sending in
your remittance so that the 'Guaranty Certificate' may
be sent you for your own benefit.

"Faithfully yours for safe protection,
"J. L. Mitchell,
"Manager Order of Washington Dept. Western Life
Indemnity Company.
"J. L. M. G. O. S."

"Sam. H. Nichols, Insurance Commissioner.
"J. H. Schively, Deputy Commissioner.
"The State of Washington, Department of Insurance,
Olympia.
"March 5, 1908.
"Mr. J. L. Mitchell, c/o Western Life Indemnity Co.,
Chicago, Ill.

"Dear Sir: Now that arrangements have been com-
pleted and all papers signed between the Order of
Washington and the Western Life. Indemnity Com-
pany of Chicago, I wish to express my most hearty
appreciation and approval of the transfer.   I know
of no movement in insurance circles which will prove
of greater benefit to the interested parties than this
reinsurance.   The Order of Washington, through the
stress of financial times and the absorption of cer-
tain other fraternal companies, had reached the point
where it could no longer fully discharge its increasing
liabilities, the only wise solution of the problem being
its reinsurance in some substantial and reliable com-
pany.   That you have made so satisfactory an ar-

rangement with the Western Life Indemnity Company is a matter concerning which the members of the Order of Washington should congratulate themselves: first, because every policy of the Order of Washington immediately becomes worth one hundred cents on the dollar, and secondly, because I have personally looked into the affairs of the Western Life Indemnity Company through the Insurance Department of Illinois and other sources, and I believe it to be a thoroughly reliable and safe company, and in good financial condition. So far as it lies in my power I shall be glad to assist you in convincing the members of the Order of Washington that this change is in the line of good judgment and of their own best personal interests.

"Very truly yours,
"J. H. SCHIVELY,
"Deputy Insurance Commissioner."

"Geo. M. Moulton, President.
"The Order of Washington Department.
"Western Life Indemnity Company, Masonic Temple, Chicago.

"March 25, 1908.

"H. A. L. Spande, Astoria, Ore.

"Dear Comrade: Inclosed herewith please find receipts covering the amount of your remittance, and also you will find inclosed *Guaranty Certificate* to be attached to your Order of Washington certificate as per agreement entered into by and between the Order of Washington and the Western Life Indemnity Company. Kindly send your next assessment direct to this office to keep your protection well secured. The reinsurance contract is going forward successfully in every degree and every comrade's certificate is now worth 100 cents on the dollar. We all have much cause for rejoicing over this change.

"Fraternally yours,
"J. L. MITCHELL,
"Mgr. The Order of Washington Dept., Western Life Indemnity Company.
"J. L. M.    A. L. H. Enc."

"Western Life Indemnity Co., Chicago.

"Kindly attach the inclosed rider agreement to your life benefit certificate as evidence that this company has assumed liability under said certificate pursuant to the terms of the reinsurance contract entered into between this company and the Order of Washington.

"Faithfully yours,

"Geo. M. Moulton,

"President.

"Western Life Indemnity Co.,

"Geo. M. Moulton, President.

"Home Office, Masonic Temple, Chicago.

"This certifies, that all the covenants and obligations heretofore imposed and undertaken by the Order of Washington under and by virtue of a certain life benefit certificate No. 245, issued by said the Order of Washington on the life of H. A. L. Spande are hereby assumed by the Western Life Indemnity Company to the extent and in the manner as set forth in a certain contract of reinsurance made and entered into by and between the Order of Washington, of Portland, Oregon, and the Western Life Indemnity Company, of Chicago, Illinois, on the 15th day of February, A. D. 1908. Executed and delivered at the home office of the Western Life Indemnity Company in Chicago, Illinois, this 21st day of March, 1908.

"Western Life Indemnity Company,

"By Geo. M. Moulton,

"President."

"Geo. M. Moulton, President.

"The Order of Washington Department.

"Western Life Indemnity Co., Masonic Temple, Chicago.

"May 14, 1908.

"H. A. L. Spande, Astoria, Ore.

"Esteemed Comrade: Please find receipt for assessment No. 5. It affords the writer pleasure and much satisfaction to report the successful and eminently satisfactory examination of this company by

the Insurance Department of the State of Washington. This company has likewise been examined during the year by the Insurance Departments of Illinois and Indiana and each examination has shown the company to be in excellent condition, with a very promising outlook for the future, all of which we know will be gratifying to our membership.

"Fraternally yours,

"J. L. MITCHELL,

"Mgr. the Order of Washington Dept. Western Life Indemnity Company.

"J. L. M.    C. D. K., Enc."

Plaintiff also offered certain receipts for moneys paid by plaintiff, all of which are identical with the one here given, to wit:

"Secretary's Official Receipt for Membership at Large.

"The Order of Washington.

"Chicago, Ill., 5/12, 1906.

Received of Comrade H. A. L. Spande—life benefit fund, assessment No. 5, for 1908.... $1 60

Sick and accident fund, assessment No. ——, for 1908 ........................................

Annual dues, general fund, to ——, 1908.......

Total............ $1 60

"WESTERN LIFE INDEMNITY COMPANY,

"By J. L. B."

Stamped on receipt:

"This premium is paid and received under the terms of the reinsurance contract dated February 15, 1908, between the Western Life Indemnity Company and the Order of Washington. Any unearned portion of this premium on February 15, 1909, will be credited upon the first premium of the policy to be substituted under said contract."

On the margin of receipt:

"To the President of Any Subordinate Union, O. W.:

"If the holder of this receipt visits your union, and be without the password for the current term, you will appoint an investigating committee, and if they can satisfy themselves that the holder hereof is a member in good standing, and his receipt is for the last assessment due, then you may communicate the term password and admit the member to a seat in your union. Patriotism. Purity. Prudence."

In the first letter from the president of the defendant company, plaintiff was told that the insurance on his life in the Order of Washington had been "lawfully transferred to defendant," and that by the payment of his next month's dues in accordance with the provisions of his benefit certificate, he would become "one of us, and one with us, until death do us part," and that immediately upon receipt of the payment, a formal agreement or guaranty would be submitted for attachment to the benefit certificate, which would bind defendant to fulfill all the obligations theretofore imposed upon the Order of Washington until such a time as a policy would be issued on defendant's forms, and at premium rates in accordance with the provisions of the reinsurance contract entered into between the Order of Washington and defendant, and that by so doing plaintiff was assured that his rights would be fully "safeguarded and adequately protected." In this letter plaintiff was apprised of the warmth of the reception that awaited him as indicated from the following excerpt: "In behalf of this company I extend to you a fraternal greeting with the glad hand of fellowship and a cordial welcome into the bosom of our organization." Having extended the "glad hand of fellowship," defendant should not be permitted to withdraw that hand upon any subterfuge or refined legal construction so as to defeat plaintiff's right to

recover, unless there is a palpable failure to prove a contract of insurance. While there is a legal duty upon the parties to a contract to perform it both in spirit and in essence, yet, in contracts of this nature, there is almost a sacred duty of performance, as they frequently act as a bridge that spans the chasm between penury and well-being for those to whom the insured in his life felt most concerned.

4. The intent of the parties being the factor which the court will try to locate, for this purpose the court will place itself in the shoes of the parties, and view the subject matter from their perspective, keeping in mind the rule that the conduct of the parties with respect to the subject matter of the contract will be looked to as affording evidence of the meaning the parties gave to the agreement: *Chicago Wharf & Storage Co.* v. *Street,* 54 Ill. App. 569.

5, 6. Two other rules are applicable: (1) That the language must be interpreted in the sense that the promisor knew, or had reasons to know, the promisee understood it; (2) that the words are to be strongly construed against the party using them: *American Lithographic Co.* v. *Commercial Casualty Co.,* 81 N. J. Law, 25 (80 Atl. 25) ; 9 Cyc. 578, 590.

Illumining the documents by these canons of construction, and it is manifest that plaintiff had a contract of insurance with defendant encompassing all the components required in a definition of that term. No error was committed by the court in overruling defendant's motion for an order of nonsuit with respect to the point just discussed.

7. Counsel for defendant further argues that an order of nonsuit should have been granted for the reason that "it is not alleged in said complaint what one assessment upon the life benefit certificate of the members of the Order of Washington would have amounted to at the time of the supposed maturity of plaintiff's

certificate of insurance, and that it is not alleged in said complaint that any assessment upon the members in good standing was made or demanded at or after maturity of plaintiff's certificate, and that there was no evidence introduced by plaintiff showing what or assessment against a member in good standing woul  have amounted to if lived out, or after the maturity of plaintiff's certificate of membership." Adverting to plaintiff's complaint, we observe the statement that immediately upon the maturity of the policy, plaintiff and his wife, the beneficiary named in the benefit certificate, notified defendant in writing that plaintiff had lived out his life expectancy, and that on account thereof the policy had fully matured; and demanded payment of $2,000, which sum or any portion thereof defendant refused to pay, and denied liability whatever to plaintiff. On this phase of the controversy the policy contains this stipulation: "Agrees that after the maturity of this certificate of membership, occasioned by the death of the member, or otherwise, one assessment on the life benefit collected for said fund, not exceeding in amount the sum of $2,000, will be paid as a benefit to Emily Weokoline Larsen Spande." The undertaking is not an unconditional one to pay $2,000, for the amount payable to the beneficiary is contingent upon the sum that may be realized from "one assessment on the life benefit collected for said fund." The amount to be paid was $2,000, or a less sum if the yield of one assessment was the result thereof. The policy being in evidence, plaintiff could recover the maximum amount stated therein, without showing the sum yieldable by an assessment, or that an assessment had been levied. The result of one assessment lying peculiarly within the knowledge of defendant, excused plaintiff from alleging and proving such matter. The duty rested upon defendant to allege and prove what amount of money one assess-

ment would produce. Failing so to do, a presumption existed in favor of plaintiff that an assessment would pay the full amount named in the certificate: *Supreme Lodge K. of P.* v. *Knight,* 117 Ind. 489 (20 N. E. 479, 3 L. R. A. 409); *Neskern* v. *Northwestern etc. Assn.,* 30 Minn. 406 (15 N. W. 683); *Hollings* v. *Bankers' Union etc.,* 63 S. C. 192 (41 S. E. 90); *International Order etc.* v. *Boswell* (Tex. Civ. App.), 48 S. W. 1108; *Kroge* v. *Modern Brotherhood etc.,* 126 Mo. App. 693 (105 S. W. 685).

8. The last material objection urged in favor of a reversal of the judgment rests upon the defense that the policy, having been issued in violation of defendant's charter and the laws of the state of its creation, is *ultra vires* and void. It must be conceded that plaintiff met promptly every condition expressed in his policy of insurance, made payment seasonably of each assessment, and that the sums so paid were accepted and now retained by defendant. With this situation in mind can defendant sustain its plea of *ultra vires?* We think not. While there is a diversity of thought concerning the law applicable to a plea of this nature, we think the weight of the authorities and the sounder reason leans against such a defense when the contract is executed and the company has received the benefit of it. The Supreme Court of Iowa in *Field* v. *Eastern Building & Loan Assn.,* 117 Iowa, 185 (90 N. W. 717), well said: "Sound public policy cannot be promoted by offering a premium for wrongdoing, and such would be the effect of an authoritative announcement that a corporation may send its agents out among the people, inducing them to invest their small savings in its stock, and then, having received the agreed consideration, escape liability because it has promised to do more than it was legally authorized to do. With that doctrine established, it would be to the interest of every corporation to exceed its lawful

powers in every contract, as the readiest means of paying its debts without depleting its assets'': *Continental Fire Ins. Co.* v. *Masonic Temple etc. Co.*, 26 Tex. Civ. App. 139 (62 S. W. 930); *Insurance Co.* v. *Shaw*, 94 U. S. 578 (24 L. Ed. 291); *Security etc. Co.* v. *Elbert*, 153 Ind. 198 (54 N. E. 753); Thompson, Corporations (2 ed.), §§ 504, 1060, 1064; *Presbyterian etc. Co.* v. *Gilbee*, 212 Pa. 310 (61 Atl. 925).

After a careful consideration of this case, we conclude that the plaintiff made a case sufficient to entitle him to the benefit of the judgment, and that no prejudicial errors appear in the record, and therefore an affirmance is ordered.     AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.