CHARLES S. MOSES, PLAINTIFF-RESPONDENT, v. EDWARD
H. ELLIS, INC., A CORPORATION OF THE STATE OF
NEW JERSEY, DEFENDANT-APPELLANT.

Argued March 20, 1950—Decided April 24, 1950.

Mr. *James M. Davis, Jr.,* argued the cause for appellant (*Mr. George B. Marshall* and *Mr. Samuel P. Orlando,* on the brief).

Mr. *Carl Kisselman* argued the cause for respondent (*Mr. Bruce A. Wallace,* attorney).

The opinion of the court was delivered by

WACHENFELD, J. A reversal is asked here based upon alleged error in the court's refusal to direct a verdict for the defendant on two grounds: (1) there was no legal obligation on the part of the defendant, and (2) assuming a legal obligation, there was no proof of any damages.

In 1936 a flood occurred in the City of Harrisburg, Pennsylvania, as a result of which it was decided to construct a new system to supply water for municipal purposes and in 1938 this project was approved by the City and the Public Works Administration of the United States Government.

A part of the work was embraced in "Contract No. 3 for the Construction of Clark Valley Dam." The contract involved forty-three items for which bids were submitted on a unit price scheme. The defendant corporation bid on all forty-three items and was awarded the contract in 1939. The contract itself was voluminous, embracing an entire book, and only the parts involved in this dispute are contained in the record before us.

On May 5, 1939, the defendant entered into a subcontract in writing with the plaintiff by which the latter undertook to do the concrete work called for in the principal contract. This subcontract concerns itself with items 14 to 25, inclusive, and 37 and 42 of the principal contract. Only items 16, 17 and 18 are in dispute. According to the agreement, the plaintiff, as subcontractor, agreed to furnish and deliver all materials and to do and perform all work and labor required, in accordance with the specifications. Paragraph 2 provided:

"In accordance and in conformity with the drawings and specifications for Contract No. 3 for the Construction of Clark Valley Dam and Appurtenances, which said drawings and specifications are hereby made a part of this agreement as fully and with the same effect as if the same had been set forth at length in the body of this agreement,— the said sub-contractor hereby certifies that having made an examination of the said drawings and specifications and of the site of the work, said sub-contractor proposes to furnish * * *, and in the performance thereof said sub-contractor shall be bound to the contractor by the same conditions, regulations and provisions as are contained in the contract of the said contractor with the City of Harris-

burg; that said sub-contractor understands the quantities of work as shown herein are approximate only and are subject to increase or decrease, and further agrees that all quantities of work, whether increased or decreased, are to be performed at the following unit prices:

| Item | | | | Unit Price | Total |
|------|------|------|---------|------------|-------|
| 16 | 815 | c. y. | concrete | $17.00 | $13,855.00 |
| 17 | 1420 | c. y. | concrete | 13.60 | 19,312.00 |
| 18 | 1730 | c. y. | concrete | 17.00 | 29,410.00" |

The concrete mentioned in the subcontract was to be placed in the excavations made by the defendant. The specifications relating to the excavating are set forth in "Section III, Excavation and Backfill," Paragraphs 105 to 118, inclusive, of the main contract. Paragraph 108 contained, amongst other things, the following provision:

"* * * Measurement for common excavation will be made between the pay lines indicated on the drawings or staked in the field and the ground surface, as indicated by the above mentioned survey. The Contractor shall remove material which has been deposited subsequent to the above mentioned survey by floods, rains or other causes, and no payment will be made for such excavation. The pay lines, as indicated on the drawings, indicate only the lines to which excavations and fill will be measured and paid for under this contract and are not intended to, and do not represent the actual slope to which excavation shall be made to safely perform this work. The actual slopes may be greater or less than those indicated, depending on the materials excavated and methods used in performing the work, but such changes will not change the measurement for payment from the original lines as specified above. The slopes of permanent excavations will be neatly trimmed to the established lines."

Paragraph 110, under the topic "Blasting for Excavation," provided:

"Blasting will be permitted only when proper precautions are taken for the protection of all persons, the work and property; and any damage done to the work or property by blasting shall be repaired by the Contractor at his own expense. All necessary precautions shall be taken to preserve the rock outside the lines of excavation in the soundest possible condition. Blasting may be done only to the depth, amount, and extent, and in such locations as will, in the opinion of the Engineer, neither crack nor damage the rock outside the prescribed limits of the excavation. No payment will be made for any rock excavation when it becomes necessary to excavate below or out-

side of the grade lines or pay lines indicated on the drawings, solely due to injury caused by overshooting, improper blasting or carelessness on the part of the Contractor, and all rock thus removed shall be replaced by concrete at the expense of the Contractor."

The specifications for concrete work on items 16, 17 and 18 each contain the following or similar language:

"After rock excavation is made to neat lines, it shall be cleaned and concrete floor poured, after setting all required reinforcing therein."

And in the case of items 16 and 17, they required that:

"Where one side of walls is against rock, no forms shall be built and concrete shall be puddled thoroughly so as to completely bond with the broken faces of the rock."

The specifications for each item provided that measurement of the work done should be made "from the dimensions on the plans and/or from sizes as directed by the Engineer in the field" and "the entire cost, plus profit, to the Contractor for completing the above described concrete work and all other work incidental thereto, shall be included in the contract price" for the item.

Provision for paying the subcontractor for his part of the work was contained in Paragraph 8 of the subcontract:

"In consideration of the premises and the work so undertaken to be performed by said sub-contractor, the said contractor herein agrees to pay the said sub-contractor for said work herein set out, as it, the contractor, is paid for the work in question by the City of Harrisburg.   *   *   *"

Before the structures called for by the items in controversy could be erected, it was necessary to excavate considerable quantities of earth and rock to make room for them.  The defendant contended the rock excavation could not be effected to the neat or pay lines, the terms are synonymous, because the rock was stratified and would not break off to a straight line or smooth surface.  This left a space between the neat lines set out in the plans and the rock walls of the excavation.  By the

terms of the contract already set forth, the defendant was required to fill this space with concrete in such a manner as to completely bond with the broken faces of the rock. The plaintiff furnished and poured concrete in a quantity sufficient to comply with this requirement and, in doing so, he naturally had to furnish concrete in excess of the quantity necessary for the work within the neat lines. He claims compensation for the excess to be computed at the unit price established in his subcontract. But the defendant contends that the additional concrete needed as a result of the crevice between the pay lines and the jagged faces of the rock was a hazard which the subcontractor foresaw and assumed at the time of making the contract and, since the principal contract contained a rule of measurement by which the subcontractor was bound, he was not entitled to payment therefor.

The plaintiff received payment for the quantities of work done between the neat lines in accordance with the estimates made by the engineers. The amount in controversy represents the extra work for which the defendant refused to pay, upon the theory that since the main contract relieved the City of paying the general contractor, the latter was likewise relieved from compensating the subcontractor, even though the subcontractor had no control or supervision over the excavations made and the extra work was necessitated by no act of his.

The case was submitted to the jury, which returned a verdict in favor of the plaintiff in an amount representing the extra yardage poured at the price per unit fixed in the subcontract. From the judgment thereon, this appeal is taken and certified here on our own motion.

There was error, the defendant asserts, in refusing to direct a verdict in that the entire principal contract between the City and the defendant was incorporated in the subcontract. Therefore the provisions of the principal contract control and the declaration in the specifications that the City would not pay the defendant under the terms of the general contract for excavation or concrete fill outside of the neat lines was to be read into the subcontract, thereby preventing the plaintiff

from recovering for the extra work in filling the area excavated by the defendant outside the neat lines. Reference is also made to Paragraph 8 of the subcontract, quoted above, wherein the defendant agreed to pay the plaintiff for the work done "as it, the contractor, is paid for the work in question by the City of Harrisburg * * *."

The defendant concedes it has no claim against the City for labor or materials used in filling in with concrete the excavation beyond the neat lines. This concession is not surprising in view of the clarity of the specific provision in the main contract that no payment would be made for any excavation of rock beyond the pay lines due to injury caused by overshooting, improper blasting or carelessness of the contractor and that "all rock thus removed shall be replaced by concrete at the expense of the Contractor." When the main contract was incorporated by reference into the subcontract, this provision was not altered or changed and the burden of paying for the replacement was still specifically assumed by the defendant.

It is urged the plaintiff knew excavation beyond the neat lines would occur and was also cognizant that the defendant was under obligation to the City to replace such excavation with concrete without pay. From this knowledge, plus the provisions of Paragraph 8 of the subcontract, the defendant attempts to spell out and construct an agreement whereby the plaintiff was to perform the work without reimbursement.

In construing contracts the court must, if possible, ascertain and give effect to the mutual intention of the parties. *Fletcher v. Interstate Chemical Co.*, 94 *N. J. L.* 332 (*Sup. Ct.* 1920); affirmed, 95 *N. J. L.* 543 (*E. & A.* 1921); *Basic Iron Ore Co. v. Dahlke*, 103 *N. J. L.* 635 (*E. & A.* 1927).

When a contract is ambiguous, it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises. *Fletcher v. Interstate Chemical Co., supra.*

Admittedly the subcontract was prepared and drawn by the defendant in its office. Any conflicts or inconsistencies,

therefore, are to be resolved in favor of the plaintiff, so far as this may be consistent with the general rule of giving effect to the intention of the parties.

Paragraph 110 of the main contract with the City of Harrisburg clearly and expressly provided that where excavation went beyond the neat lines the defendant would fill in the space with concrete at its own expense. That liability was predicated on the fact that the defendant had the sole supervision and control of the work of excavation and it was in the nature of a penalty for failure to comply with the plans and specifications which attempted to prevent, so far as possible, excavation beyond the neat lines.

The defendant's president admitted he knew before the work started that the excavation beyond the neat lines would happen. Yet, despite this knowledge, the contract prepared in his office contains no similar clear and unequivocal clause indicating the burden of refilling at his own expense was to be assumed by the subcontractor. The omission of such language, as contrasted to its specific use in the main contract, is a fact to be considered in determining the true intent of the contracting parties.

The party who drafted the contract and is responsible for its ambiguities "has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage." *Fletcher v. Interstate Chemical Co., supra.* The responsibility here sought to be imposed would not be lightly assumed by the plaintiff, who had no control over the excavations easily made by blasting but difficult and expensive of repair by concrete. Such a penalty will not be created nor spelled out by mere inference when it is not clearly and unequivocally expressed in the contract itself.

Where the contractual construction is doubtful, the surrounding circumstances may be considered to ascertain the true meaning of the language and terms employed. In *Basic Iron Ore Co. v. Dahlke, supra,* the court said:

"The trial court, in reaching a result, resorted to the practical construction placed upon the contract, as shown by the conduct of the parties, such as their acts in partial performance; such a construction is entitled to great weight, if not controlling, in determining its proper interpretation. The acts done under it are a clue to the intention of the parties."

On one occasion, during the course of the construction work, the defendant paid the plaintiff for extra concrete required when the excavation went beyond the prescribed line, despite the defendant's knowledge that it would not get and was not entitled to reimbursement from the City. This is the very ground on which the defendant now denies liability. The fact such a payment was made during the period of the performance of the contract is an element to be weighed in determining the intent and understanding of the parties at that time.

Moreover, there is the uncontradicted testimony of the plaintiff as to an exchange that occurred with the defendant's president, Ellis, while the work was in progress. When the plaintiff complained about the size of the excavation, Ellis replied:

"We can't excavate any neater. They will have to pay for it."

The plaintiff then said:

"That is between you and the City of Harrisburg. Regardless whether you get paid or not, I expect to be paid for it, and it will be paid."

The record shows no demurrer by Ellis to this construction placed upon their contract nor was he questioned concerning it when he later took the stand. Under the rule enunciated in *Basic Iron Ore Co. v. Dahlke, supra,* these factors are properly considered as "a clue to the intention of the parties."

The defendant stresses the incorporation by reference, in Paragraph 2 of the contract, of the drawings and specifications, "conditions, regulations and provisions" of the main contract. In a somewhat similar factual situation,

*Guerini Stone Co. v. P. J. Carlin Const. Co.*, 240 *U. S.* 264, 60 *L. Ed.* 636 (1916), the court said:

"The reference in the subcontract to the drawings and specifications was evidently for the mere purpose of indicating what work was to be done, and in what manner done, by the sub-contractor. Notwithstanding occasional expressions of a different view * * * in our opinion the true rule, based upon sound reason and supported by the greater weight of authority, is that in the case of subcontracts, as in other cases of express agreements in writing, a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified."

The subcontract referred to the main contract primarily for the purpose of detailing the work to be done and the manner of its performance. Its wording, establishing unit prices for the work to be done and providing that quantities of work shown therein "are approximate only and are subject to increase or decrease," considered in the light of the subsequent conduct of the parties, leads us to the conclusion it was the intent that the plaintiff should be paid at the prescribed unit rates for the work made necessary by the defendant's failure to keep the excavation within the neat lines set forth in the main contract.

We find no error in the submission to the jury of the issues of fact presented by the evidence herein narrated.

It is next urged there is no legal proof of damages according to the rule of measurement prescribed in the contract.

Before this action was commenced, the plaintiff had already been paid for the concrete poured within the neat lines. This payment was based upon a computation of the amount so poured, made by the project engineers and accepted by both parties. The damages here claimed represent the cost of supplying and pouring the concrete, over and above that amount, necessary to fill in the excess excavation.

The proof of the extra amount so required consisted of testimony as to the quantities of ingredients used at the mixing plant, the cubic yardage of finished concrete such quan-

tities would produce and the allowance made for waste in pouring.

The defendant questions the legality of this method of proving the quantity of surplus concrete required, contending the specifications called for measurement to be made "from the dimensions on the plans and/or from sizes as directed by the Engineer in the field."

We cannot agree with this reasoning. The dimensions contained in the plans were those of the neat lines and made no provision for measurement of fill-ins necessitated by excess excavation. They thus have no applicability here.

A reading of the item specifications of the main contract in their entirety reveals quite clearly that the provision for measurement "from sizes as directed by the Engineer in the field" refers to excavations to a greater depth than originally contemplated which might be made necessary if no rock was encountered at the prescribed depth. Such further excavations, if required, were to be paid for by the City and the extent of them was to be determined and authorized by the field engineer. No such situation is involved in the present dispute.

On the contrary, we are here concerned with concrete fill made necessary by the defendant in going beyond the neat lines. Such excavations were not authorized nor was the City concerned with the costs thereby incurred, since the main contract specifically provided they should be borne by the defendant.

To ascertain the measurement of damages to be applied, we must look to the subcontract. Paragraph 2 sets forth estimates as to the amount of concrete work required by each item and the provision "that all quantities of work, whether increased or decreased, are to be performed at" certain unit prices set forth. Pursuant to this rule of measurement, the plaintiff introduced proof of the number of additional units of concrete work required and claimed compensation at the established unit price. The verdict returned in his favor was in accord with the proof.

We find no error in the measure of damages employed, nor was the proof, as urged, speculative or remote.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT and WACHENFELD—4.

*For reversal*—Justice HEHER—1.