27 N.J. Super. 547 (1953)
99 A.2d 841
JOHN MEEHAN, PLAINTIFF-RESPONDENT,
v.
KAVENY BROS. OIL COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1953.
Decided October 20, 1953.
*549 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Nathan Turesky argued the cause for defendant-appellant.
No appearance for plaintiff-respondent.
The opinion of the court was delivered by GOLDMANN, J.A.D.
Defendant appeals from a judgment of the Essex County District Court entered in favor of plaintiff.
On July 10, 1951 plaintiff executed an agreement with defendant for the purchase and installation of an oil burner, including a 550-gallon outside tank. The installation was completed September 20, 1951. The oil burner went out of order November 7, 1952. This was at once reported to defendant but it failed to act on the complaint. Plaintiff then called in the Lindeman Company, which had filled the tank only two days before. The tank measured empty. A phone call requesting defendant to look at the tank because a leak was suspected brought no satisfaction, nor did a personal visit to its office. Defendant took the position that the one-year service guarantee period under the agreement had expired in September. Plaintiff then arranged for the Lindeman Company to install a new tank, but before doing so again phoned defendant to take care of the condition, without result. When the tank was raised two or three very porous spots were discovered through which the oil had leaked. The ground around the tank was oil-soaked.
The complaint is in three counts: (1) defendant had guaranteed the installation for one year, but the tank was defective and defectively installed, resulting in loss of oil and requiring replacement of the tank; (2) defendant had represented the tank to be new when in fact it was not; and (3) defendant had agreed to sell plaintiff a new tank in perfect condition. The main defense was that the guaranty period had expired and if any complaint was made to defendant it came after the expiration date. At the trial *550 defendant stipulated that it had agreed to install a new tank. The trial judge in his oral conclusions found as a fact that the tank was defective when installed and that the condition must have had its origin some three years before. Judgment in the sum of $295 and costs was entered in plaintiff's favor.
Defendant's first point on appeal is that the trial court erred in permitting MacIntosh, one of plaintiff's witnesses, "to testify as to hypothetical questions and technical data outside the scope of his qualifications." He had inspected the tank when it was taken out of the ground and found the exterior apparently in good condition except for the two or three porous spots. He actually pushed his finger through one of them. He testified the tank had rusted through from the inside; there was evidence of corrosion. The only question objected to in the course of his direct examination was:
"Assuming this tank had been installed as a new tank on September 20, 1951, and was in new condition without defect, could that tank possibly have corroded to the point of the condition you found it in in November of 1952?" [This was error; the date was December 26, 1952.]
The objection was overruled and the witness answered "no," meaning, as the court brought out, that a new tank should last longer than a year.
MacIntosh had had 20 years' experience as manager of a business supervising the installation and servicing of oil burners. During that time he bought, sold and installed about 500 oil tanks, but had "pulled up" only four. We think that the range of his experience was sufficient to enable him to answer the questions.
Whether a witness has knowledge or experience sufficient to qualify him as an expert is a matter left to the discretion of the trial court, and its decision is conclusive unless clearly shown to be erroneous as a matter of law. Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950); Schnoor v. Palisades Realty and Amusement Co., 113 N.J.L. *551 506, 507 (E. & A. 1934); 2 Wigmore on Evidence (3rd ed.), § 561, p. 641.
It may be observed there was no objection to other questions put to MacIntosh which elicited answers that the type of defect he found resulted from a "very slow process," that it would take probably three years for corrosion to bring about the condition he discovered, and that the corrosion had begun before the tank was installed. There was no error in admitting the MacIntosh testimony.
Defendant's second point is that the court erred in interpreting the agreement between the parties. The company contends that the trial judge failed to recognize that the warranty upon which suit was brought extended for only one year after the installation of the tank and, further, required the defective part be returned within the year, which was not done here. The warranty referred to appears on the back of the agreement, directly under the main caption, "Guarantees, Terms and Conditions forming part of Agreement on Reverse Side":
"The Seller warrants said OIL HEATING EQUIPMENT to be free from defects in material and workmanship under normal use and service, and the Seller agrees to make good at its place of business any part or parts thereof (electric motors and windings subject to the manufacturer's guarantee) which shall, within one year after installation be returned to the Seller with transportation charges prepaid and which upon examination discloses to the satisfaction of the Seller to have been so defective. * * *"
This clause may be read in two ways. One is that there is but a single agreement as to equipment defects, and the purchaser may obtain no relief unless he returns the defective equipment to the seller within a year of its installation. In other words, the agreement to make good appearing in the second part of the sentence constitutes the sole means of enforcing the warranty appearing in the first part. This interpretation is clearly the basis of defendant's position, although its brief does not analyze the clause. The other reading is that the sentence is to be divided into two parts: first, a general warranty not limited to a one-year period, *552 and second, an agreement that defendant will make good any parts returned to it within the year.
There are several matters which, it might be argued, support the first interpretation, in addition to the fact that the warranty and the provision to make good appear in one sentence. Above the sentence appears: "SELLER'S GUARANTEE TO REPLACE DEFECTIVE PARTS." This title seems to discard the general warranty which makes up the first part of the sentence. The title itself is hardly dispositive of the question.
Again, on the face page of the agreement there is typed: "Including local permits and one year guarantee and service." This "one year guarantee" provision is of dubious import. It would appear unlikely that it was intended as a guarantee in addition to the quoted sentence. If it were, then the guarantee was broken, for the proofs establish that the tank was defective within the year. In all probability it was meant as nothing more than a sort of label for the warranty and "make good" clause appearing on the reverse side. However, if it is such a label, it is not so clear a description of the clause as to relieve that clause of its ambiguity.
Finally, paragraph 12 of the terms and conditions printed on the reverse side speaks of "the one-year guarantee period" during which the purchaser agreed to buy fuel oil from the seller, but these words were intended merely as a measure of time and again are hardly dispositive of the problem.
We turn to the indicia favoring the second interpretation. First, there is the main caption on the reverse side, already mentioned  "Guarantees, Terms and Conditions" etc., guaranty being in the plural. This is admittedly a slight circumstance, in itself entitled to minor consideration. Printed on the first page of the agreement is the statement that the contract is "subject to the guaranties" on the reverse side  again the plural. Paragraph 11 on the reverse side refers to the seller being absolved from responsibility "under any guarantees or warranties herein contained" if the purchaser fails to make payments strictly as called for by the contract. And paragraph 8 also refers to "guarantees." This repeated *553 use of the plural lends support to the interpretation that the clause in question creates more than one guarantee.
This interpretation, however, has something more to sustain it. If one were to adopt the first interpretation outlined above, it would render largely nugatory the broad terms of the opening clause in an almost misleading fashion.
The second reading of the clause is not insensible. The agreement to make good means that the seller must make the defective parts as good as new, usually by supplying new parts. Where defendant has to produce a new part, it is protected by the one-year clause and other conditions. The limitation period does not cut down the general warranty found at the beginning of the sentence.
At the least, the warranty clause is of dubious import. It appears at the very head of the printed terms on the reverse of the contract. Whether artlessly or intentionally drawn as it was, it doubtlessly was intended to bring in business. It is a well settled rule of construction that where a contract is susceptible of two constructions, it is to be construed most strongly against the party in whose behalf it was prepared, and liberally and most strongly in favor of the other party. Among the cases that can be cited for this rule, see Warsley v. Brtan, 114 N.J.L. 36 (E. & A. 1934); Forbes v. First Camden Nat. Bank & Trust Co., 25 N.J. Super. 17 (App. Div. 1953). True, the rule has been held to be a last resort, but resort to it is justified in this case. American Lithograph Co. v. Commercial Insurance Co., 81 N.J.L. 271 (Sup. Ct. 1911).
Though the question before us is a close one we adopt the second reading of the clause in question in view of the stated principle of construction. Plaintiff made out a case under that interpretation.
We have thus far dealt with defendant's second point on the chosen ground of his appeal  that the court failed to recognize the one-year warranty. But the complaint was also based, in its second count, on defendant's representation that it was selling and installing a new tank. Defendant stipulated at the very beginning of the trial that this was so. *554 The proofs definitely establish that the tank was not a new one, but that rust had long since begun to eat through its 3/16-inch metal shell. Defendant delivered and installed a tank not strictly new; the tank may never have been used in a prior installation but it was not "new" in the sense that it was of recent fabrication, relatively fresh from the fabricator and plant inspection which would insure its fitness and soundness for installation and use. The fact that it passed examination by an inspector of the municipal bureau entrusted with such matters means little. He looked at the outside of the tank, but made no inspection of the inside.
Plaintiff was entitled to recover for damages flowing from defendant's failure to install a new tank.
Affirmed.