**JERSEY LAND AND DEVELOPMENT CORP., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 261–70.**

United States District Court, D. New Jersey.

April 5, 1972.

---

Hannoch, Weismann, Stern & Besser, by Ronald M. Sturtz, Newark, N. J., for plaintiff.

Smith, Stratton, Wise & Heher, by John R. Heher, Princeton, N. J., for Charles Emmett Lucey.

George Kandravy, Asst. U. S. Atty., Newark, N. J., for defendant.

SHAW, District Judge.

Plaintiff filed a complaint in this court seeking a refund for corporate income tax alleged to have been erroneously assessed by the government and paid by plaintiff. Plaintiff expressed dissatisfaction with the services of its attorney, Charles Emmett Lucey, Esq. As a consequence, Mr. Lucey withdrew his representation but refused to relinquish books, correspondence and files belonging to plaintiff on the ground that he had a lien thereon for unpaid counsel fees. Plaintiff denies that there is any money owing and moves for an order of this Court directing Charles Emmett Lucey, Esq., and the firm of Maguire, Tucker and Oehmann, Esqs., of which Mr. Lucey was formerly a member, to return all books, correspondence and files belonging to plaintiff so that they may be available for continued prosecution of the tax litigation by substituted counsel.

The dispute involves interpretation of a retainer agreement executed by William J. Bigley, president of plaintiff corporation, and the Washington, D. C., law firm of Maguire, Tucker and Oehmann with whom Mr. Lucey was associated as a partner at the time of the execution of the retainer agreement. An evidentiary hearing was held and the following pertinent facts emerged:

Mr. Lucey severed his partnership association with the firm of Maguire, Tucker and Oehmann and Mr. Lucey provided all of the legal services in the tax litigation, including preparation and filing of the complaint in this court. The law firm with which he was formerly associated makes no claim for any earned fees. The retainer agreement was set forth in two letters, both drafted by Mr. Lucey. The retainer agreement as set forth in these letters is quoted in pertinent part as follows:

> The Corporation shall pay this firm a retainer of $5,000.00 which shall be due and payable upon acceptance of this arrangement. Hourly charges at the rate of thirty dollars ($30.00) per hour for associates and seventy-five dollars ($75.00) per hour for partners time shall be paid. These hourly charges, together with out-of-pocket expenditures incurred by this firm in connection with this matter, shall be rendered monthly. The books of the firm will be open for your inspection at any time in this regard. In addi-

tion, a contingency fee in the amount of 10% of any recovery up to $30,000.00 and 20% of any recovery over and above $30,000.00 shall be paid. (Letter of January 20, 1970) This letter will serve to confirm our agreement of this date which in effect amends the fee arrangement set forth in my letter of January 20, 1970 so as to provide an overall limitation on hourly fees of $5,000.00. That is to say, the hourly charge shall be as set forth in the letter of January 20th, but such charges shall not exceed in the aggregate of $5,000.00. (Letter of January 23, 1970).

Both letters were signed by Mr. Lucey and countersigned by Mr. Bigley as president of plaintiff corporation. Mr. Bigley's signature appears below a postscript which reads:

I hereby agree to the above-described arrangement with Maguire, Tucker & Oehmann.

The fact that the two letters set forth the only written agreement to pay counsel fees is not disputed. The dispute centers around the question of what the parties intended by the language used. Mr. Lucey contends that it was the understanding of both parties that plaintiff would pay a $5,000 retainer and pay additional hourly billing fees, the aggregate amount of which was not to exceed $5,000. Under the agreement as interpreted by Mr. Lucey he was entitled to receive as much as $10,000 plus a percentage of tax refund recovery. Mr. Bigley insisted that he had agreed to a $5,000 retainer to be applied against hourly billings, such billings not to exceed a total of $5,000. The initial $5,000 fee was paid in March 1970. Mr. Lucey now demands an additional $5,000 which he asserts to be the charge for hourly billings. When questioned by the Court as to what plaintiff was to receive in the way of services for the initial payment of $5,000, Mr. Lucey replied in substance that the consideration for this was that he hold himself available to represent plaintiff. He takes the posi-

tion, as indicated above, that the $5,000 was merely a retainer by virtue of which he would hold his legal services available to plaintiff and that it was intended that additional payment computed on an hourly basis was to be made for any services actually rendered in the tax litigation up to an amount not to exceed $5,000.

■ In point of clarity as to the intent of the parties, the retainer agreement drafted by Mr. Lucey leaves much to be desired. If the intent of the parties emerging from discussions prior to the drafting of the retainer agreement was as contended by Mr. Lucey, it seems that it would have been a very simple matter to express that intent in clear and unequivocal language. On the crucial issue of the understanding which the parties had reached as to legal fees by discussions prior to drafting of the two letter agreements, testimony is in sharp conflict and credibility is sharply in issue. The two letters are integrated writings and the absence of clear and unequivocal expression permits evidence of all surrounding circumstances. Resort to extrinsic evidence of surrounding circumstances is permissible where there is doubt as to what the parties intended by the language which was used. In Casriel v. King, 2 N.J. 45, 65 A.2d 514 (1949), the New Jersey Supreme Court stated:

. . . The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. So far as the evidence tends to show not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant. (At page 517)

Atlantic Northern Airlines v. Schwimmer, 12 N.J. 293, 96 A.2d 652 (1953); Deerhurst Estates v. Meadow Homes,

**52**

Inc., 64 N.J.Super. 134, 165 A.2d 543 (App.Div.1960).

■ Parenthetically, it should be mentioned at this point that the Court is proceeding to apply New Jersey law. Plaintiff is a New Jersey corporation. The facts out of which the tax litigation which Mr. Lucey was to handle arose out of an income tax assessment made in this district. Litigation for a refund of taxes paid was commenced in this district. While the retainer agreement was drafted in the Washington, D. C., office of Mr. Lucey, the acceptance thereof was in the State of New Jersey.

■ The motion for return of property consisting of books, correspondence and files of plaintiff is collateral to the primary tax suit for refund of income tax. Accordingly, there is a threshold question of jurisdiction. Under the doctrine of ancillary jurisdiction, this Court does have jurisdiction to determine the payment of legal fees. State of Iowa v. Union Asphalt and Roadoils, Inc., 281 F.Supp. 391 (S.D. Iowa 1968). This Court agrees with the definition of ancillary jurisdiction as set forth in *Union Asphalt*, supra, at pages 396, 397:

> The ancillary jurisdiction theory is relatively simple—once federal jurisdiction properly attaches to a primary case, the court also has jurisdiction over certain subsidiary or subordinate disputes even though it might not independently be able to proceed to adjudicate them. See, e. g., Murphy v. Kodz, 351 F.2d 163 (9 Cir.); Lee v. Terminal Transport Co., 282 F.2d 805 (7 Cir.), cert. den. 365 U.S. 828, 81 S. Ct. 713, 5 L.Ed.2d 705 (1960); Aetna Ins. Co. v. Chicago, R.I. & P.R. Co., 229 F.2d 584 (10 Cir.); Glen Falls Indem. Co. v. United States, etc., 229 F.2d 370 (9 Cir.). It is well-settled that upon substitution of attorneys in litigation, a client may be required to either pay the attorney or to post security for reasonable fees as ancillary to the Court's jurisdiction of the main case. See e. g., National Equipment

Rental, Ltd. v. Mercury Typesetting Co., 323 F.2d 784 (2 Cir.); Maddox v. Jinkens, 66 App.D.C. 362, 88 F.2d 744; Woodbury v. Andrew Jergens Co., 69 F.2d 49 (2 Cir.). In the situation at hand, the Court's jurisdiction to fix attorney fees is generated by its auxiliary relation to the antitrust action by the State. It may be true that the practice of injecting a condition of departure into an Order of removal is proper, but the Court cannot agree that it must be done in every case. The precepts of the ancillary jurisdiction doctrine dictate that the federal courts should extend their jurisdiction to encompass orbital disputes subordinate to the principal action so that *complete* justice may be done. See Walmac Co. v. Isaacs, 220 F.2d 108 (1 Cir.); Cooperative Transit Co. v. West Penn Elec. Co., 132 F. 2d 720 (4 Cir.); Ancillary Jurisdiction of the Federal Courts, 48 Iowa L.Rev. 383 (1963). Considerations of judicial economy and fairness to all parties underlie the ancillary jurisdiction theory. Consolo v. Federal Maritime Comm., 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). And once jurisdiction has attached, it will generally continue until it has been fully exhausted. Rhodes v. Houston, D.C., 202 F.Supp. 624, Aff'd. 309 F. 2d 959 (8 Cir.), cert. den. 383 U.S. 971, 86 S.Ct. 1282, 16 L.Ed.2d 311 (1965). It would appear that the sound policies behind the doctrine and its elasticity would command the Court to retain jurisdiction over the auxiliary matter of attorney fees even though it entered a previous Order allowing the counsel to withdraw without such a condition.

■■ The law of the State of New Jersey must be applied in this case to resolve the issue of attorneys fees. See Lehigh & N. E. R. Co. v. Finnerty, 61 F.2d 289 (3rd Cir. 1932). It is settled New Jersey law that a retaining lien attaches to all papers, books, documents, etc., which came into Mr. Lucey's possession by virtue of his legal services in

representing plaintiff. He has the right under New Jersey law to retain possession of the same until all fees due to him are paid. Brauer v. Hotel Associates, Inc., 40 N.J. 415, 192 A.2d 831 (1963):

> The focal point is not upon the objective worth of the property, but upon its subjective worth to the client and those who represent him. (At page 835)

■ Despite the fact that the agreement as to legal fees purports, by virtue of the signature of Mr. Bigley below the postscript which he inserted, to have been made with the firm of Maguire, Tucker and Oehmann, there appears to be no doubt that this firm has disclaimed all interest in the matter and that such legal services as were performed were rendered by Mr. Lucey with plaintiff's consent. The Court comes now to the crucial question to be resolved, i. e.: Whether or not it was the intent of the parties that Mr. Lucey receive $5,000 plus legal fees billed on an hourly basis for services actually rendered, not to exceed an additional $5,000. Of course, resolution of this question is not dependent upon unilateral understanding of what was intended. As the court stated in *Deerhurst, supra,* 165 A.2d at page 551:

> The settled primary standard of interpretation of an integrated agreement is the meaning that would be ascribed to it by a reasonably intelligent person who was acquainted with all of the operative usages and circumstances surrounding the making of the writing.

Applying this primary standard of interpretation, prior negotiations as well as subsequent conduct of the parties are admissible to reveal the mutual intent of the parties by the language used. It was for that purpose that an evidentiary hearing was held to uncover all extrinsic evidence which would shed light on the mutual intent.

■ Lucey argues that as a matter of general usage and common understanding the word "retainer" imports a consideration *only* that the attorney will hold himself available to serve the client; that full payment for legal services actually furnished is expected without credit for money advanced on retainer. This Court does not agree. It cannot be fairly said that the word "retainer" has such an established general usage that this Court could presume it to have been so known to and understood by Mr. Bigley.

Mr. Lucey testified emphatically that it was understood that the retainer money was not to be applied as payment for legal services which would be billed on an hourly basis. It was his opinion that the retainer money was the price Bigley agreed to pay for *availability* of Lucey's services. Mr. Bigley testified just as emphatically that he did not and would not agree to an arrangement whereby plaintiff would receive no credit for charges for legal services against the $5,000 advanced. He insisted that the ceiling on the amount of money to be paid was $5,000 plus a contingency fee.

Though the first $5,000 was paid on March 11, 1970, Mr. Lucey testified to having sent repeated invoices for hourly billings covering the period from March 2, 1970, to February 13, 1971. Mr. Bigley did not contradict Mr. Lucey on this score but he did testify that he paid no attention to these continuing statements because he was confident that he had a fee arrangement which would not exceed an expenditure of $5,000; and that this was the limit on the amount plaintiff was to pay unless Mr. Lucey was successful in prosecuting the refund suit in which event the contingency provisions of the agreement would come into effect. Mr. Bigley also testified that in some discussions with Mr. Lucey conducted subsequent to the mailing of the invoices which Bigley ignored, that he was refusing to pay more than the $5,000 which had already been advanced.

■ The Court had opportunity during the evidentiary hearing to observe the demeanor of Mr. Lucey on the stand

and that of Mr. Bigley. The Court finds that the issue of credibility must be resolved in favor of Mr. Bigley. Moreover, our courts have been consistent in interpreting agreements between an attorney and a client in favor of the client and against the attorney who drew the agreement where the intent of the parties is not clear. This, in the opinion of the Court, is a situation where the agreement should be liberally construed in favor of the client. Williston on Contracts, Third Edition, § 1285A, at page 931[1]. The foregoing is in accord with the more general rule that a writing is construed against the draftsman. Moses v. Edward H. Ellis, Inc., 4 N.J. 315, 72 A.2d 856 (1950); Meehan v. Kaveny Bros. Oil Co., 27 N.J.Super. 547, 99 A.2d 841 (App.Div.1953). The reason for this rule was articulated in an earlier case. In Fletcher v. Interstate Chemical Co., 94 N.J.L. 332, 110 A. 709 (S.Ct. 1920), the court said:

> . . . [T]he rule is that where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises [citation omitted]; the reason for the rule being that a man is responsible for ambiguities in his own expressions, and has no right to induce another to contract with him on the supposition that the words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage. (At page 710)

■ This rule has been held to be a rule of last resort since it is a rule of construction rather than a rule of interpretation. See *Meehan, supra.* However, resort to this rule is helpful to dispel any doubt as to the appropriate ultimate finding. Application of this rule of construction leads the Court to accept Mr. Bigley's version of the fee arrangement. The Court, however, does not rest its conclusion entirely upon this rule of construction. The language of the agreement upon its face is susceptible of misunderstanding as to what the parties intended. In fact, the disagreement of both parties as to what was intended by the language used is cogent evidence of absence of clarity. Mr. Bigley's testimony as to what he understood the commitment to be from the language used is more credible than the opposing testimony of Mr. Lucey. Judged in the light of common experience of mankind in this area of attorneys fees, it is most improbable that plaintiff agreed to pay Mr. Lucey $5,000 *merely* to assure availability of future legal services. An absence of intent to do this is more in keeping with probability.

■ One further question demands some attention. That question is whether or not legal services rendered justified the hourly billing submitted by Mr. Lucey. This Court has the inherent equitable power to pass upon the reasonableness of counsel fees charged in connection with any matter before it, provided that the action of the Court does not nullify or diminish the effectiveness of a valid contract voluntarily entered upon by parties of equal bargaining power. It is the opinion of the Court that it was the intent of the parties to fix a ceiling on fees in the amount of $5,000 and that billing on an hourly basis up to that amount was intended. The rate fixed by the agreement was $75 per hour for partners' time and $35 per hour for associates' time. The Court cannot say that these rates per hour are so unreasonable that it would be inequitable to enforce them. Moreover, there could have been no misunderstanding by the language of the agreement that these billings were to be measured by these rates. There was no contention that the billings did not exceed $5,000.

The Court was not impressed with Mr. Lucey's testimony relating to his

---

[1]. In construing or interpreting these contracts " . . . the courts are adamant in construing any ambiguity against the attorney who drew the agreement and liberally in favor of the client."

hourly charges for telephone calls. While, however, the Court has some doubt that the legal services rendered in making such telephone calls were necessary or that $75 per hour for such calls was reasonable, nevertheless, the evidence presented is insufficient to permit a finding that there should be any refund of the $5,000 retainer.

It will be ordered that plaintiff be relieved from obligation to make any further payment to Mr. Lucey for legal services in connection with the tax refund suit. It will be further ordered that all of the books, correspondence, papers and files which had been in the possession of Mr. Lucey (and were delivered to the Clerk of the Court) relating to the tax litigation be released from the custody of the Clerk of the Court and delivered to plaintiff forthwith. Costs will be assessed against Mr. Lucey.

An appropriate order for entry of judgment will be presented.