**Charles G. ADAMS, Jr. et al., Plaintiffs,**

v.

**ALLIED CHEMICAL CORPORATION et al., Defendants.**

**Civ. A. No. 76–0031–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 30, 1980.

Sidney H. Kelsey, Sidney H. Kelsey, Jr., Kelsey & Kelsey, Norfolk, Va., for plaintiffs.

William Mills Krieger, James S. Insley, Krieger & Insley, Newport News, Va., for

applicants for intervention Lester Ferguson et al.

William Mills Krieger, Newport News, Va., for applicants for intervention Sterling S. Whiting et al. and Mayward Holloway et al.

Donald A. Stokes, Stokes, Lemmond & Palmer, Hopewell, Va., Samuel P. Johnson, III, White, Hamilton, Wyche & Shell, Petersburg, Va., Robert L. Harris, Richmond, Va., for Norwood Wilson, Jr.

Joseph M. Spivey, G. H. Gromel, Jr., Hunton and Williams, Richmond, Va., for Allied Chemical Corp.

George R. Humrickhouse, Williams, Mullen & Christian, Richmond, Va., for City of Hopewell, Va.

W. Carter Younger, McGuire, Woods & Battle, Richmond, Va., for Hooker Chemicals & Plastic Corp.

Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., Marshall Harris, Philadelphia, Pa., for U. S. Dept. of Labor.

## MEMORANDUM

MERHIGE, District Judge.

The instant issue is a dispute over attorney's fees, which arose in the course of a diversity lawsuit. The original complaint was filed on January 20, 1976, by Sidney Kelsey, a Norfolk, Virginia attorney, against Allied Chemical Corporation and others, seeking compensation on behalf of a group of plaintiffs for damages allegedly sustained as a result of the closing of the James River, due to contamination by the chemical Kepone.

In August, 1979, Kelsey, who at that time believed that settlement of the action was extremely unlikely, entered into an agreement with Edward Taylor, a Richmond attorney, providing that Taylor would assist Kelsey in preparing for and conducting the trial of the action, which was scheduled to begin on March 10, 1980. In consideration for his services, Taylor was to receive one third of Kelsey's contingent fee if the case settled, and one half of the fee should the case proceed to trial. In October, 1979, a

breakthrough of sorts occurred in the settlement negotiations between Kelsey and Allied. As a result, Kelsey concluded that he would not require Taylor's services, and informed Taylor that their association was terminated. Taylor, however, notified Kelsey that according to his understanding of their agreement, he was entitled to one third of Kelsey's fee, and asserted an attorney's lien for that amount.

■ There is no need to discuss at greater length the complex facts of this unfortunate dispute, because the Court concludes, despite the disputing parties' contentions, that it lacks jurisdiction. It is well settled that the limited jurisdiction of the federal courts may not be enlarged by consent or waiver. *Pacific National Insurance Co. v. Transport Insurance Co.*, 341 F.2d 514 (8th Cir. 1965) *cert. denied*, 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434. The federal court has a duty, as it has done, to examine its jurisdiction *sua sponte*, and any doubts as to its existence must be resolved by declining jurisdiction. *Resolute Insurance Co. v. State of North Carolina*, 276 F.Supp. 660, *aff'd.* 397 F.2d 586, *cert. denied*, 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439.

There is no diversity, federal question, or other independent basis for jurisdiction over the instant controversy. Involving as it does persons who were not parties to the original action, a controversy such as this may be decided by a federal court only, if at all, under the doctrine of ancillary jurisdiction.

To promote judicial economy and fairness, ancillary jurisdiction allows a federal court, in certain circumstances, to decide subordinate disputes for which there is no independent jurisdictional basis "so that complete justice may be done." *State of Iowa v. Union Asphalt and Roadoils*, 281 F.Supp. 391, 396 (S.D.Iowa 1968), *aff'd* 409 F.2d 1239 (6th Cir. 1969). Because of the infinite variety of peripheral disputes that may arise in the course of federal litigation, the determination as to whether a given issue is sufficiently related to the main issue to provide a basis for ancillary jurisdiction cannot be made by reference to a sin-

gle factor or standard. Instead, the decision must turn on a careful analysis of the facts of the particular case, balancing the purposes to be served by disposition of the ancillary matter against the obligation of the federal court to avoid needless decisions of state law.

Admittedly, in certain circumstances a federal court may assume ancillary jurisdiction over a claim for attorney's fees arising out of a matter properly before the court. For instance, in *State of Ohio v. Union Asphalt and Roadoils, supra,* an award of fees to discharged attorneys was held to be justified by the court's power to condition an attorney's withdrawal upon payment of fees. Similarly, in *Jersey Land and Development Corp. v. United States,* 342 F.Supp. 48 (D.N.J.1972), the district court found jurisdiction to decide a fee dispute that came before it on a party's motion for an order requiring his discharged attorney, who had retained the party's files and papers, asserting a lien thereon, to return the property.

Jurisdiction over a fee claim may also be found where the claim relates to assets in the actual or constructive possession of the court. In *Grimes v. Chrysler Motor Corp.,* 565 F.2d 841 (2d Cir. 1977), the district court had required deposit of settlement funds into the court's registry. The Court of the Appeals for the Second Circuit held that under the standard of *Fulton National Bank of Atlanta v. Hozier,* 267 U.S. 276, 45 S.Ct. 261, 69 L.Ed. 609 (1925), the district court's distribution of settlement funds among plaintiffs, their trial counsel, and their attorney of record, was "clearly ancillary to its approval of the settlement of the case." 565 F.2d 841, 844. *See also Andrews v. Central Surety Insurance Co.,* 295 F.Supp. 1223 (D.S.C.1969).

On the other hand, as in the instant case, where there is no nexus between the main matter and the fee dispute, apart from the fortuity that the latter arose during the course of the former, the fee dispute is not ancillary. The federal court's lack of jurisdiction was clear in *Bounougias v. Peters,* 369 F.2d 247 (7th Cir. 1966), in which the plaintiffs in a concluded federal diversity case sued the attorneys who had represented them, claiming that the fee arrangement in the earlier action had been unconscionable. The Court of Appeals for the Seventh Circuit held that the fee claim "was not a controversy dependent upon or ancillary to the personal injury litigation which generated the fees." 369 F.2d 247, 249. More factually similar to the instant case is *Minersville Coal v. Anthracite Export Assoc.,* 55 F.R.D. 429 (M.D.Penn.1972), in which the district court found that it lacked jurisdiction to decide a fee controversy between plaintiffs and their counsel concerning the distribution of a settlement fund which was not in the custody of the court.

■ The Court concludes that there is no connection between the underlying action and the instant fee controversy which would justify an assumption of ancillary jurisdiction. The subject matter of the contractual dispute between the two attorneys has no relation whatever to that of the concluded diversity action; the Court does not have possession or control of the funds against which Taylor has asserted a lien; and none of the parties to the underlying action have any interest in the outcome of this controversy. Additionally, considerations of judicial economy and fairness do not militate in favor of federal jurisdiction. The fact that the diversity action proceeded to settlement in this Court gives it no special expertise bearing on the merits of the fee dispute. There is simply no reason why this contract dispute involving Virginia law, between Virginia attorneys, cannot or should not be decided in a Virginia state court.

Finally, while the Court is aware of a 1951 Fourth Circuit case which found ancillary jurisdiction on facts similar to those in *Minersville Coal, American Federation of Tobacco Growers, Inc. v. Allen,* 186 F.2d 590, 4th Cir., that case is distinguishable from the instant dispute, in that there, one of the parties to the fee dispute was a party to the underlying action. The Court there reasoned that so long as the attorney's fee matter was pending, the case "would not be settled and put out of court." 186 F.2d 590,

592. Without expressing a view of the Court's reasoning in the *Minersville* case, this Court has serious misgivings in concluding that the mere fact that the instant issue arose during the course of a case properly before it, gives rise to the invocation of ancillary jurisdiction. To so conclude would be to elevate ancillary jurisdiction to a doctrine without limitation. Absent a clear expression from the Court of Appeals for the Fourth Circuit, this Court declines to exercise jurisdiction over the present controversy.